Robert O'LEARY, as trustee of Lakeland Printing Co., Inc., et al., Respondents,

v.

CAREFREE LIVING OF AMERICA (MINNETONKA), INC., Appellant.

No. C6-02-769.

Court of Appeals of Minnesota.

Jan. 8, 2003.

Paul R. Haik, Krebsbach & Haik, Ltd., Minneapolis, MN, for respondents.

Michael C. Mahoney, Julianne L. Emerson, Mahoney, Hagberg & Davisson, P.A., Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## O P I N I O N

PETERSON, Judge.

This appeal is from a judgment awarding respondents compensatory damages for the lost value of the use and occupation of real property during the pendency of an appeal from a judgment that directed the recovery and sale of the real property. Appellant argues that the district court erred by awarding respondents damages in an amount that exceeds the supersedeas bond posted to stay enforcement of the judgment during the pendency of the previous appeal and by determining that payments appellant made constituted waste. We conclude that appellant's liability for damages is not limited by the amount of the supersedeas bond, but because the district court did not explain how the amount of damages it awarded reflects the lost value of the use and occupation of the real property during the previous appeal, we

affirm in part and remand in part with instructions.

## FACTS

The respondents in this appeal were limited partners in Leisure Living of Minnetonka Limited Partnership, a Minnesota limited partnership that owned an option to purchase real estate. The option was wrongfully transferred to appellant Carefree Living of America (Minnetonka), Inc., which exercised the option, acquired the real estate, and built a building on it. Following a trial in an action brought by respondents to recover the real estate from appellant, the district court ordered that the partnership should recover the property, that the property should be sold, and that the proceeds of the sale should be distributed as provided by the Uniform Limited Partnership Act. Judgment was entered, and Carefree Living appealed. The district court conditioned a stay of enforcement of the judgment on the posting of a $90,000 supersedeas bond, and appellant posted the bond. The amount of the bond was based on an assumption that the appeal would take six months.

This court affirmed the judgment, and the supreme court denied further review. *O'Leary v. Carefree Living of Am., Inc.,* 2001 WL 1083757 (Minn.App. Sept.18, 2001), *review denied* (Minn. Dec. 11, 2001). Respondents then brought a motion in the district court seeking damages for the use and occupancy of the property during the earlier appeal, which actually took 14 months, and to apply the supersedeas bond against the total amount of damages. The district court initially awarded respondents $210,000 for the value of the use and occupation of the property. This amount was determined by applying the $15,000 monthly value used to determine the bond amount to the 14-month appeal period. In an amended judgment, the district court increased the damages award to $448,517.07, which was the sum of (1) several payments appellant made to third parties while the appeal was pending using rents received from the property and (2) the increase in the mortgage debt on the property due to appellant's failure to make mortgage payments.

## ISSUES

1. When a supersedeas bond is posted to stay enforcement of a judgment during the pendency of an appeal, may the court that approved the supersedeas bond later assess actual damages incurred as a result of the stay on the motion of a party?

2. When an appellant posts a supersedeas bond to stay enforcement of a judgment during the pendency of an appeal, is the appellant's liability for damages incurred as a result of the stay limited to the amount of the supersedeas bond?

3. Did the damages awarded to respondents reflect the lost value of the use and occupation of the real property awarded to respondents in the judgment that was stayed during the previous appeal?

## ANALYSIS

1. Minn. R. Civ.App. P. 108.01, subd. 1, states:

Except in appeals under Rule 103.03(b), or as otherwise provided by law, the filing of a proper and timely appeal suspends the authority of the trial court to make any order necessarily affecting the order or judgment appealed from. The trial court retains jurisdiction as to matters independent of, supplemental to, or collateral to the order or judgment appealed from, and to enforce its order or judgment.

Unless otherwise provided by law, a proper and timely appeal does not stay an order or judgment or enforcement

proceedings in the trial court but the appellant may obtain a stay by providing a supersedeas bond or other security in the amount and form which the trial court shall order and approve, in the cases provided in this rule, or as otherwise provided by rule or statute.

An application to approve a supersedeas bond, or for a stay on other terms, shall be made in the first instance to the trial court. Upon motion, the appellate court may review the trial court's determination as to whether a stay is appropriate and the terms of any stay.

A supersedeas bond, whether approved by the trial court or appellate court, shall be filed in the trial court.

After the appeal from the judgment that gave respondents possession of the property was completed, respondents brought a motion in the district court for damages arising from appellant's use and occupancy of the property during the pendency of the appeal and to apply the supersedeas bond posted with the trial court against the total amount of damages. Appellant does not challenge respondents' decision to seek enforcement by motion. But because rule 108.01 does not identify a procedure for enforcing a claim against a supersedeas bond, and we are not aware of any Minnesota appellate court decision that recognizes an enforcement procedure, we will briefly address the propriety of seeking enforcement by motion.

■ More than 100 years ago, in *Russell v. Farley*, 105 U.S. (15 Otto) 433, 26 L.Ed. 1060 (1881), a case that originated in Minnesota, the United States Supreme Court addressed the question whether, in the absence of any statute or court rule authorizing a damages award, courts have any power to make a decree on the subject of damages arising from an injunction when a bond has been given as security for damages sustained as a result of the in-

junction. The Supreme Court determined that when there is no statute or rule, courts "must still be governed in the matter by the general principles and usages of equity." *Id.* at 441. After analyzing opinions that addressed principles of equity in the context of enforcing and carrying out conditions imposed as security before granting an injunction, the Supreme Court stated:

The imposition of terms and conditions upon the parties before the court is an incident to its jurisdiction over the case; and having possession of the principal case, it is fitting that it should have power to dispose of the incidents arising therein, and thus do complete justice, and put an end to further litigation. We are inclined to think that the court has this power; and that it is an inherent power, which does not depend on any provision in the bond that the party shall abide by such order as the court may make as to damages (which is the usual formula in England); nor on the existence of an express law or rule of court (as adopted in some of the States) that the damages may be ascertained by reference or otherwise, as the court may direct; this being a mere appendage to the principal provision requiring a bond to be taken, and not conferring the power to take one, or to deal with it after it has been taken. But whilst the court may have (we do not now undertake to decide that it has) the power to assess the damages, yet if it has that power, it is in its discretion to exercise it, or to leave the parties to an action at law.

*Id.* at 445–46. Because the lower court in *Russell* did not attempt to assess any damages, the Supreme Court did not ultimately decide that courts have the inherent power to assess damages. But we find persuasive the explanation that the power to assess damages is an incident of

the power to require that a bond be posted. Therefore, because the purpose served by a bond required as security before granting an injunction is comparable to the purpose served by a supersedeas bond obtained to stay a judgment during an appeal, we conclude that a court that approves a supersedeas bond to stay enforcement of a judgment during an appeal has the inherent power to later assess actual damages incurred as a result of the stay and may assess those damages on the motion of a party.

Our conclusion is consistent with the practice in the federal courts, where enforcement of a bond by motion is expressly allowed under Fed.R.Civ.P. 65.1, which states:

> Whenever these rules * * * require or permit the giving of security by a party, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety submits to the jurisdiction of the court and irrevocably appoints the clerk of the court as the surety's agent upon whom any papers affecting the surety's liability on the bond or undertaking may be served. *The surety's liability may be enforced on motion without the necessity of an independent action.*

(Emphasis added.)

■ 2. Carefree Living argues that the district court erred by awarding appellants damages for waste in an amount that exceeds the $90,000 supersedeas bond. Minn. R. Civ.App. P. 108.01, subd. 5, states:

> If the appeal is from a judgment directing the sale or delivery of possession of real property, the condition of the bond shall be the payment of the value of the use and occupation of the property from the time of the appeal until the delivery of possession of the property if the judgment is affirmed and the under-

taking that the appellant shall not commit or suffer the commission of any waste on the property while it remains in the appellant's possession during the pendency of the appeal.

■ The supersedeas bond that appellant provided binds appellant and its surety to pay $90,000 to respondents. The bond describes the conditions of this obligation as follows:

> If said Carefree Living of America (Minnetonka), Inc. shall pay all costs and charges which may be awarded against it on said appeal; and *shall pay up to $90,000.00 as the value of the use and occupation of the property from the time of the appeal until the delivery of possession of the property* if the judgment or any part is affirmed or the appeal is dismissed and the [appellant] shall not commit or suffer the commission of any waste on the property while it remains in the [appellant's] possession during the pendency of the appeal, then this obligation shall become void: otherwise to be and remain in full force and effect.

(Emphasis added.) Appellant contends that under the emphasized language in the bond, its obligation to pay is limited to $90,000, and the district court erred by awarding compensatory damages over and above $90,000. But it has been held in the context of an injunction bond that the amount of the bond limits the liability of the surety but not the liability of the principal.

In *Mitchell v. Riegel Textile, Inc.,* 104 U.S.App.D.C. 139, 259 F.2d 954, 954 (1958), several textile mills asked a United States district court to set aside and enjoin as illegal a minimum-wage determination of the Secretary of Labor. The district court stayed the determination and temporarily enjoined the secretary from enforc-

ing it. *Id.* The court also ordered any plaintiff who entered into a contract otherwise covered by the determination to post a bond to make good underpayments of wages, up to the amount of the bond, if the minimum-wage determination was ultimately upheld. *Id.* at 954–55. After the minimum-wage determination was upheld on appeal, and it was finally decided that the stay and preliminary injunction should not have been granted, the Secretary of Labor moved in the district court for an order requiring the plaintiffs to make good their underpayments of wages, with interest, and enforcing the liability of the sureties on the bonds. *Id.* at 955. The district court held that the liability of both the sureties and the plaintiffs was limited to the amount of the bonds that had been posted. *Id.*

The court of appeals agreed that the liability of the sureties was limited to the amount of the bonds, but it reversed as to the plaintiffs and held that they were liable for the entire amount of the difference between the wages they paid while the injunction was in effect and the minimum wage that the Secretary of Labor had set. *Id.* The court of appeals explained:

> This difference was the amount the plaintiffs saved, and the employees lost, by reason of the erroneous injunction. It was therefore the amount by which the plaintiffs were unjustly enriched at the employees' expense.

*Id.*

The court's decision was based on the equitable principle of unjust enrichment, and the court reasoned that when the employers made the underpayment, unjust enrichment was complete. We conclude that the equitable principle of unjust enrichment applies with equal force in the present case. To the extent that appellant saved money by not paying for the value of the use and occupation of the property

while the property was in appellant's possession, appellant was enriched at respondents' expense. Therefore, the district court could properly award compensatory damages over and above the $90,000 bond amount.

■ 3. Carefree Living argues that the district court erred by determining that payments it made using rent proceeds received during the pendency of the appeal constituted waste. But the district court did not determine that these payments constituted waste. Instead, in its amended order, the court stated:

> [Respondents] are awarded for compensatory damages suffered during the pendency of [appellant's] appeal, as and for the lost value of use and occupation of the property, the sum of $448,517.07.

This amount represents the sum of the payments appellant made to third parties while the appeal was pending and the increase in the mortgage debt on the property due to appellant's failure to make mortgage payments.

The district court did not specifically address each of the payments included in the total amount, but it is apparent that the court concluded that the payments diverted money received from operating the property to purposes that were not essential to operating the property. It is not apparent, however, why the court concluded that the sum of these payments and the increase in the mortgage debt constituted the lost value of the use and occupation of the property. Even if the payments were an improper means of diverting money from the property, it does not necessarily follow that the sum of the payments and the increase in the mortgage debt constitutes the value of the use and occupation of the property.

Appellant's claim that the court determined that the payments constituted waste might explain the court's intent, particular-

ly in light of the fact that the court included in the total the increase in the mortgage debt due to appellant's failure to make mortgage payments. The failure to pay interest on a mortgage is a form of waste. *See* 8 Richard R. Powell, *Powell on Real Property* § 56.05[2], at 56–19 (2000) (failure to make certain carrying charge payments such as property taxes, interest on mortgages, and special public assessments is classified as permissive waste). But because the court's amended order states that the damages awarded are "for the lost value of the use and occupation of the property," we cannot simply infer that the court intended the award to be an award for waste. Instead, we remand with instructions for the district court to explain how the damages awarded reflect the value of the use and occupation of the property during the previous appeal or to make a new determination of damages that includes the value of the use and occupation of the property and the specific value of waste, if any, that occurred during the previous appeal.

## DECISION

After approving the supersedeas bond that stayed enforcement of the judgment during the earlier appeal, the district court had inherent power to later assess damages actually incurred as a result of the stay, and this power was properly invoked by respondents' motion. Appellant's liability for damages incurred as a result of the stay is not limited to the amount of the supersedeas bond. Because the district court's order awarding damages does not adequately explain how the amount was calculated, we remand so that the district court may make findings to explain how the amount awarded reflects the value of the use and occupation of the property during the previous appeal or make a new determination of damages that reflects the value of the use and occupation of the

property and any waste that occurred during the previous appeal.

**Affirmed in part and remanded in part.**